IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CHELLIS ACKERS,
    et al.,

        Plaintiffs,

vs.

        Case No. C2-06-496
        Judge Edmund A. Sargus, Jr.
        Magistrate Judge Norah McCann King

CELESTICA CORP.,
    et al.,

        Defendants.

## OPINION AND ORDER

In this case, Defendants Celestica Corporation and Lucent Technologies move to dismiss all claims asserted in Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), or in the alternative pursuant to Rule 12(b)(6). In particular, Defendants assert that Plaintiffs' claims are preempted by Section 8 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158, and as such, the Court lacks subject matter jurisdiction. Alternatively, Defendants maintain that Plaintiffs' claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and are thus barred by the applicable statute of limitations. Plaintiffs oppose the Motion, contending that their state-law claims are not subject to the preemption doctrine under any theory and that their case should proceed on the merits. Because the Court concludes that Plaintiffs' claims are preempted by Section 8 of the NLRA, Defendants' Motion to Dismiss is granted. The Court does not address Defendants' contentions related to preemption under Section 301 of the LMRA.

**I.**

On May 10, 2006, Plaintiffs in this matter, several former employees of Lucent Technologies, Inc. ("Lucent") and, subsequently, Celestica Corporation ("Celestica"), filed their Complaint in the Court of Common Pleas of Franklin County, Ohio, alleging state-law claims of fraud and fraudulent inducement in violation of public policy. On June 20, 2006, Defendants timely removed the action to this Court on the bases of both diversity of citizenship and federal question jurisdiction.

According to the allegations of the Complaint, Lucent and Celestica are unrelated corporations engaged in the business of manufacturing and selling parts and services related to the electrical and telecommunications markets. Until July 2001, Lucent operated a manufacturing facility located in Columbus, Ohio. Plaintiffs in this matter are former Lucent employees from the Columbus facility.

In January of 2001, Lucent publicized its intent to eliminate approximately 30,000 of its 100,000 manufacturing jobs across the country as part of a corporate cost-cutting plan, including, for purposes of this case, many positions in Columbus. On January 24, 2001, in a letter addressed to all employees, Lucent Plant Manager J.E. Hines stated the intent of the company to sell the Columbus facility, together with its operations and workforce. Hines emphasized that Lucent's intent was to identify a corporate purchaser within six (6) months and that Lucent would work with the prospective manufacturer to provide continued employment for the employees of the Columbus facility. Hines also stated that Lucent would continue to engage Plaintiffs' local union-bargaining entity as an integral part of the process. Hines wrote that, "[t]he work will remain in Columbus, but as part of a different company, one focused on manufacturing." He further stated:

> Because of the manufacturing expertise of this team, many of you will have a rich potential for increased visibility and career development opportunities within a company that makes manufacturing its core business. . . . Lucent plans to keep the

> work and jobs in Columbus. Lucent is very eager to keep this team together and maintain the type of productivity it has demonstrated in the past.

(Compl., ¶ 5.) Lucent thus advised Plaintiffs that it was seeking a corporate buyer for the Columbus facility that was willing to maintain operations, and communicated its willingness to continue bargaining with the employees' local union, the International Brotherhood of Electrical Workers ("IBEW").

On or about July 24, 2001, Celestica purchased the Columbus plant from Lucent. Prior to the completion of the purchase, however, Lucent advised Plaintiffs' union of its intention to eliminate four hundred positions at the facility. Lucent also offered an early retirement plan by which eligible employees could voluntarily leave the company with enhanced benefits. (Compl., ¶ 6.)

During the July to September 2001 transition-period following the sale, Celestica and the IBEW engaged in negotiations regarding the Columbus employees. During bargaining sessions, Celestica and Lucent "repeatedly assured, represented, and promised" employees, including Plaintiffs, that Lucent employees would keep their jobs with Celestica for at least five years; Celestica would remain in the Columbus facility for at least five years; and Celestica would build and increase the business in production and service in Columbus during this five year period. (Compl., ¶ 8.) Plaintiffs allege that, in exchange for these assurances, they agreed to accept a reduction in their hourly wage and made other contract concessions. (*Id.*) Lucent employees, including Plaintiffs, ratified a five-year collective bargaining agreement ("CBA") with Celestica in September, 2001. Plaintiffs remained employed by Lucent at the Columbus plant until November 30, 2001 and officially began working for Celestica on December 1, 2001.

After Plaintiffs began working for Celestica, the company reassigned employees from its other facilities to the Columbus plant to learn the method and procedure previously used by Lucent in designing, manufacturing, and distributing amplifiers and other electrical, wireless and telephonic products. According to Plaintiffs, Celestica specifically reassigned its employees from other facilities to Columbus "in order to usurp and pilfer the method and procedure used at the Columbus, Ohio, facility, with the knowledge and intent to gain the benefit of these procedures and methods and then close the Columbus, Ohio, facility." (Compl., ¶ 9.)

In June of 2002, Celestica began relocating the manufacturing of amplifiers and other electronic products to Canada. At the same time, the company announced that it was restructuring its business which involved additional cost reductions, layoffs and further relocation activities. On July 25, 2002, Celestica notified its Columbus employees that production would cease by October 4, 2002, and that the Columbus facility would be closed. Celestica shifted production to its other facilities and sold the Columbus plant back to Lucent.

On August 30, 2002, Celestica laid off and terminated the employment of one-half (½) of the Columbus facility employees. Celestica terminated another substantial portion of the employees on September 27, 2002, and the remainder of the employees at the date of the facility's closing on October 4, 2002. (Compl., ¶ 12.)

In this case, Plaintiffs assert causes of action for common-law fraud and fraudulent inducement in violation of public policy. Plaintiffs allege that Defendants made false and fraudulent representations and failed to disclose material facts "prior to and after entering the collective bargaining agreement between Plaintiffs and Defendant Celestica in September, 2001." (Compl., ¶ 13.) In particular, Plaintiffs allege that they relied on Defendants' representations that they would

keep their jobs and that the Columbus facility would remain open, and, based on these false and misleading representations, agreed to reduced wages and other concessions in the CBA with Celestica, and did not pursue the early retirement benefit or other employment options.

## II.

Defendants have moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), and, alternatively, for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). "Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990); *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). To meet that burden, the plaintiff must show that the complaint "alleges a claim under federal law, and that the claim is 'substantial.' " *Musson Theatrical, Inc. v. Fed'l Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). The plaintiff will survive the motion to dismiss by showing "any arguable basis in law" for the claims set forth in the complaint. *Id.* In conducting its review, a court must "construe the complaint in a light most favorable to the plaintiff, accept as true all of plaintiff's well-pleaded factual allegations, and determine whether the plaintiff can prove no set of facts supporting [the] claims that would entitle him to relief." *Ludwig v. Bd. of Trustees of Ferris State Univ.*, 123 F.3d 404, 408 (6th Cir. 1997). "In reviewing a 12(b)(1) motion, the court may consider evidence outside the pleadings to resolve factual disputes concerning

jurisdiction, and both parties are free to supplement the record by affidavits." *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003).

Under Rule 12(b)(6), a complaint may be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The standard requires that a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2000). The complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). The Court, however, need not accept as true legal conclusions or unwarranted factual inferences. *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir.1998). A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir.1993).

### III.

Defendants move to dismiss all claims asserted by Plaintiffs in their Complaint, contending that such claims are preempted by Section 8 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.* According to Defendants, the Court lacks subject matter jurisdiction over Plaintiffs' claims. Alternatively, Defendants move for dismissal for the reason that Plaintiffs' claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and, as such, fail to state a claim due to the statute of limitations.

With respect to their argument that Plaintiffs' claims are preempted by the NLRA, Defendants contend that Plaintiffs' claims, although framed as state-law causes of action for fraud and fraudulent inducement, are artfully pleaded unfair-labor practices charges. Defendants maintain that Plaintiffs' claims can only be asserted, if at all, before the National Labor Relations Board ("NLRB" or "Board") as unfair labor practices in violation of the NLRA.

*San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959), establishes that federal labor law preempts all state-law claims that implicate conduct which is regulated by the NLRA. "As a general rule," *Garmon* establishes that "federal courts do not have jurisdiction over activity which is 'arguably subject to § 7 or § 8 of the [NLRA],' and they 'must defer to the exclusive competence of the [NLRB].' " *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83 (1982)(quoting *Garmon*, 359 U.S. at 245). The NLRA codifies Congress' intent to preclude states from interfering with the collective bargaining relationship and labor disputes between employers and labor unions. In matters of collective bargaining, federal regulation is exclusive and is vested in the NLRB. *See Motor Coach Employees v. Lockridge*, 403 U.S. 274, 288-89 (1971)(summarizing rationale for preemption as it relates to the need for a uniform national labor policy).[1] Thus, state as well as federal courts must defer to the exclusive competence of the NLRB. *Garmon*, 359 U.S. at 245. The party asserting *Garmon* preemption bears the burden of showing that the conduct at issue is prohibited or protected by the NLRA. *Int'l Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 395 (1986); *N. W. Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018, 1027 (6th Cir. 2001).

---

[1] As the court explained in *Motor Coach Employees*, when Congress set forth federal labor policy, it deliberately placed the responsibility "for applying and developing this comprehensive legal system in the hands of the expert administrative body rather than the federalized judicial system." 403 U.S. at 288.

Plaintiffs' causes of action are presumptively preempted if they concern conduct that is actually or arguably either prohibited or protected by the NLRA. The *Garmon* rule, however, is not absolute and allows for limited exceptions. In particular, a state cause of action is not preempted if the matter at issue only peripherally concerns federal law or touches deeply rooted state or local interests, such as maintaining the peace. *Local 926, Int'l Union of Operating Engineers v. Jones*, 460 U.S. 669, 676 (1983). In such cases, the state's interest in controlling or remedying the effects of the conduct is balanced against both the interference with the NLRB's ability to adjudicate controversies committed to it by the NLRA, and the risk that the state will sanction or protect conduct addressed by the NLRA. *Id.* Thus, for purposes of the preemption inquiry, the Court's focus is on the conduct which allegedly gives rise to Plaintiffs' claims, as opposed to the descriptive title given to a particular cause of action.

Plaintiffs' fraud claims assert that (1) Lucent did not bargain in good faith over the implications of the decision to sell and shut down the Columbus facility; (2) Celestica did not bargain in good faith in negotiating a new CBA with Plaintiffs' union; and (3) Celestica did not bargain in good faith over the decision to relocate bargaining unit work. The crux of Plaintiffs' fraud and fraudulent inducement claims relate to the wage and other concessions they accepted in the CBA in reliance on Lucent and Celestica's representations that the plant would remain open. These claims all fall within the unfair labor-practices prohibition of the NLRA. Section 8 of the NLRA obligates an employer to negotiate with employees "in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder. . . ." 29 U.S.C. § 158(d).

Plaintiffs argue that their claims are not preempted because Defendants' fraudulent misrepresentations occurred both "prior to and after entering the collective bargaining agreement." (Compl., ¶ 13). Fraudulent misrepresentations occurring during the course of collective bargaining negotiations fall under an employer's Section 8 duty to bargain in good faith. Here, with respect to their assertion that Defendants made several misrepresentations prior to the execution of the CBA regarding continuity of employment and keeping the work in Columbus, these allegedly fraudulent statements fall within Section 8 of the NLRA which specifically address an employer's obligation to negotiate an agreement in good faith. *See* 29 U.S.C. § 158(d).

Although Plaintiffs place particular emphasis on the misrepresentations that allegedly occurred after the CBA was in place, for the purpose of preemption in this case, the distinction is of little consequence. Specifically, Plaintiffs contend that *after* Celestica and Plaintiffs entered into the CBA, Defendants continued to make fraudulent misrepresentations about ongoing operations at the Columbus facility. (Compl., ¶ 13). Fraudulent misrepresentations which occur after execution of a CBA also fall within the purview of Section 8. *See Serrano v. Jones & Laughlin Steel Co.*, 790 F.2d 1279 (6th Cir. 1986).

In *Serrano*, employees attempted to establish that their claim against the employer for fraudulent conduct did not implicate the NLRA because the misrepresentations occurred after the agreement was in place. *Id.* at 1286-87. The Court concluded, however, that the claim arguably violated Section 8 because the employer's actions, if true, amounted to a violation of the duty to bargain in good faith. *Id.* Although in *Serrano* the agreement had already been negotiated, the employer engaged in allegedly fraudulent conduct when it continued to "take advantage of the concessions without revealing the likelihood of shutdown." *Id.* "Since the duty to bargain

unquestionably extends beyond the period of contract negotiations, defendant had the duty to disclose any information they had concerning a shutdown of the plant . . . as it related to the concessions made in the Memorandum of Agreement during the entire period of the agreement. Failure to make the disclosures would constitute a failure to bargain in good faith." *Id.* at 1283 (quoting district court decision dismissing fraud claims on grounds of preemption). The duty to bargain in good faith imposed by Section 8 of the NLRA continues during the term of the collective bargaining agreement. *See id.* (noting duty to bargain in good faith extends beyond negotiations into term of the agreement).

This Court finds *Serrano* binding in this context. The conduct underlying Plaintiffs' fraud claims arguably violates the employer's duty to bargain in good faith. Even if Defendants retained the discretion to decide whether to close the Columbus facility, they had a duty to negotiate in good faith over the effects of that decision. "[W]hether classified as a violation of the general duty to bargain in good faith or the more particular duty to bargain over the effects of a . . . closure, the conduct about which plaintiffs are complaining was arguably a violation of [S]ection 8." *Serrano*, 790 F.2d at 1287; *see also Baize v. Philip Morris Inc.*, 120 Fed. Appx. 576, *2 (6th Cir. Dec. 17, 2004)(unreported)(holding that analysis of plaintiffs' fraud claims related to allegations that they agreed to contract concessions in reliance upon employer's statements that the plant would remain open "begins–and ends– with section 8 preemption . . . .")²

---

²     In *Alongi v. Ford Motor Co.*, 386 F.3d 716 (6th Cir. 2004), employees sued their former employer for fraud, violation of public policy, and civil conspiracy following the closure of a manufacturing facility. The employer sought dismissal of the complaint, asserting that the claims were preempted by the LMRA. The Sixth Circuit concluded that employer representative's statements to specific individuals, including "personal guarantees" of continued employment made by the employer's representative after the ratification of the CBA were not preempted. *Id.* at 726. The state claims asserted were based on allegations that individuals were given promises outside the collective bargaining

-10-

The Court concludes that the gravamen of the Plaintiffs' fraud claims is that Defendants did not bargain in good faith in obtaining concessions from the Union and its members. By failing to disclose its intention to close the Columbus facility and relocate the work to Canada, Plaintiffs are, in essence, contending that Defendants continued to take advantage of certain concessions without revealing the likelihood of a facility closure. Such a claim, if established, could very well represent a violation of the Defendants' obligation to bargain in good faith in violation of Section 8. Only the NLRB, however, would have jurisdiction to hear such a claim. Because Defendants' duty to bargain in good faith over the terms of the CBA extended beyond the negotiations, Plaintiffs' claims for fraud and fraudulent inducement which occurred after the CBA was signed, arguably fall within the provisions of Section 8.

The Court's conclusion that Defendants' conduct is arguably prohibited under Section 8 is additionally supported by the fact that the NLRB entertained unfair labor practice charges arising out matters which are the subject of Plaintiffs' Complaint. In support of their Motion to Dismiss, Defendants attached the affidavit of Thomas L. Rosenburg.[3] This affidavit documents that on December 18, 2002, Plaintiffs filed a charge with the NLRA against Defendant Celestica for unfair

---

agreement.

Here, by contrast, Plaintiffs make reference– a single, unspecified reference— that Defendants, with prior knowledge and intent to relocate the business, "made material false assurances, representations, and promises . . . prior to and after entering the collective bargaining agreement. . . . " (Compl., ¶ 13.) Plaintiffs' statement that representations were made "prior to and after" the CBA was ratified are distinguishable from the clear and unambiguous representations at issue in *Alongi*.

[3]  For purposes of Defendants' Motion under Fed. R. Civ. P. 12(b)(1), the Court's duty to ensure its subject matter jurisdiction permits consideration of matters outside the pleadings. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (when assessing a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, the burden remains at all times with the plaintiff to establish jurisdiction, and the court is free to weigh the evidence).

labor practices. (Rosenburg Aff., Exh. 7, ¶¶ 5-6)(charging that employer violated NLRA by "refusing and failing to bargain in good faith with the Union over the effects of the employer's decision to close/relocate the work at the Columbus plant," and by "inducing the Union to enter into the collective bargaining agreement . . . while concealing that" its agreement did not require continued operations for five years). While a previous unfair labor charge is not dispositive of the issue nor a necessary prerequisite to a finding of preemption, in this case, it bolsters the conclusion that Plaintiffs' claims are preempted by Section 8.

Thus, this Court finds that, absent an applicable exception, Plaintiffs' claims are preempted by the NLRA. *Garmon* preemption does not apply when "the matter at issue is of only peripheral concern to the federal law or if it touches interests deeply rooted in local feeling and responsibility." *Local 926, Int'l Union of Operating Engineers v. Jones*, 460 U.S. 669, 676 (1983). "Failure of an employer to bargain in good faith about terms and conditions of employment is not peripheral to the concerns of federal labor law; rather, it strikes at the heart of one of the basic concerns of that law." *Serrano*, 790 F.2d at 1287. The essence of Plaintiffs' Complaint is that they relied on Defendants' fraudulent misrepresentations about the future of the Columbus facility in deciding to forego the option of early retirement with severance and in agreeing to make wage reductions and other contract concessions during collective bargaining negotiations. These claims fall squarely within an employer's duty to bargain in good faith under Section 8, and thus "strike[] at the heart" of the very tenets of the NLRA. *Id.*

Nor do Plaintiffs' claims touch "interests deeply rooted in local feeling and responsibility." *Local 926, Int'l Union of Operating Eng'rs v. Jones*, 460 U.S. 669, 676 (1983). Under this exception, "'[t]he critical inquiry, therefore, is not whether the State is enforcing a law relating

specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to . . . or different from . . . that which could have been, but was not, presented to the Labor Board.'" *Serrano,* 790 F.2d at 1285 (quoting *See Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters,* 436 U.S. 180, 197 (1978)). In other words, courts must determine whether the state claim can be adjudicated without a significant risk of interference with the NLRB's uniform enforcement of labor law.

Plaintiffs also bring claims for fraud and fraudulent inducement in violation of public policy. These claims, though couched as state-law causes of action, fall within Defendants' duty to bargain in good faith, an action expressly covered by section 8 of the NLRA. Thus, this Court finds that Plaintiffs could have presented (and did in part) the same controversy to the Board by requesting relief for violations of section 8 of the NLRA.

In this case, "allowing state law fraud claims for conduct that would also be a violation of the employer's duty to bargain in good faith would necessarily undermine the Board's exclusive jurisdiction and may subject the employer to conflicting substantive rules." *Parker v. Connors Steel,* 855 F.2d 1510, 1518 (6th Cir. 1988). Accordingly, the claims are preempted and the Court yields to the primary jurisdiction of the NLRB.

## IV.

Because this Court has determined that Plaintiffs' claims are within the exclusive jurisdiction of the NLRB, the Court does not address Defendants' arguments under Fed. R. Civ. P. 12(b)(6) as to whether the LMRA's statute of limitations bars recovery. For the foregoing reasons, Defendants' Motion to Dismiss (Doc. #10) is **GRANTED**.

**IT IS SO ORDERED.**

_____3-21-2007_____
**DATED**

_____
**EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE**